1   **WO**

2

3

4

5

6               **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8

9   Elane Elita Thompson,                    No. CV-21-08076-PHX-SPL

10              Plaintiff,                    **ORDER**

11   v.

12   Commissioner of Social Security
    Administration,

13

14              Defendant.

15          At issue is the final decision of the Commissioner of Social Security

16   ("Commissioner") denying Plaintiff Elane Elita Thompson's application for supplemental

17   security income under the Social Security Act, 42 U.S.C. § 405(g). Before the Court are

18   Plaintiff's Opening Brief (Doc. 18), Defendant's Response (Doc. 19), Plaintiff's Reply

19   (Doc. 20), and the administrative record (Doc. 13, "R."). Upon review, the Court reverses

20   the Administrative Law Judge's decision (R. at 13-25) as upheld by the Appeals Council

21   (R. at 1-3).

22   **I.     BACKGROUND**

23          Plaintiff filed an application for supplemental security income on August 25, 2017,

24   alleging a period of disability beginning on October 12, 2016. (R. at 14). Plaintiff's claim

25   was initially denied on October 30, 2017 (R. at 78–87, 93), and again upon reconsideration

26   on March 22, 2018. (R. at 100–101). Plaintiff testified at an administrative hearing held on

27   October 21, 2019. (R. at 55). On January 29, 2020, Plaintiff wrote a letter amending the

28   onset date to March 27, 2019. (R. at 14, 42). Following a supplemental hearing held on

June 15, 2020 (R. at 32-53), the Administrative Law Judge ("ALJ") issued a decision finding Plaintiff was not disabled. (R. at 10–25). The Appeals Council denied Plaintiff's request for review on February 12, 2021, adopting the ALJ's decision as the agency's final decision. (R. at 1–3). Plaintiff subsequently filed the present appeal. (Doc. 1).

After considering the medical evidence and opinions, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 25, 2017, and that Plaintiff had the following severe impairments: major depressive disorder and L5-S1 bilateral foraminal stenosis. (R. at 16). However, the ALJ determined that Plaintiff did not have an impairment that met or equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. at 17). Specifically, the ALJ determined that Plaintiff did not meet listings 12.04 (for depressive, bipolar and related disorders) or 1.04 (for disorders of the spine). (*Id.*). Ultimately, the ALJ found that Plaintiff possessed the residual functional capacity ("RFC") to perform the requirements of occupations such as housekeeping/cleaner, marker, and cafeteria attendant; therefore, the ALJ found the Plaintiff was not disabled. (R. at 24-25).

## II.    LEGAL STANDARDS

A person is considered "disabled" for the purpose of receiving social security benefits if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether to reverse an ALJ's decision, this Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* To determine whether substantial evidence supports a decision, the Court

must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Id.* At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). Third, the ALJ determines whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ determines the claimant's RFC. §§ 404.1520(e), 416.920(e). At step four, the ALJ determines whether the claimant's RFC precludes them from performing past relevant work. § 404.1520(a)(4)(iv). If so, the ALJ proceeds to the fifth and final step, and determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III.   ANALYSIS**

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence and is the product of legal error where the ALJ failed to property evaluate the opinion evidence of two medical sources: Paul Tilyou, M.D. and Devin Porter, P.A.-C. (Doc. 18 at 11). Plaintiff requests that the Court reverse and remand this matter for further proceedings, including a *de novo* hearing and a new decision. (*Id.* at 25). Defendant asks the Court to affirm the ALJ's decision. (Doc. 19 at 20).

///

## A. Applicable Standard

For disability benefits claims filed prior to March 27, 2017, the Ninth Circuit previously recognized "a hierarchy among the sources of medical opinions." *Singer v. Comm'r of Soc. Sec. Admin.*, No. CV-18-01767-PHX-JJT, 2019 WL 9089997, at *2 (D. Ariz. Oct. 11, 2019) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). SSA regulations classified medical opinion sources into three types: 1) treating physicians (who treat a claimant), 2) examining physicians (who examine but do not treat a claimant), and 3) non-examining physicians (who do not examine or treat a claimant). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ was instructed to give more weight to treating medical sources than non-examining sources due to a treating physician's heightened familiarity with a claimant's condition. 20 C.F.R. § 404.1527(a)(2). If the ALJ declined to give controlling weight to a treating physician's opinion, the ALJ had to provide "specific and legitimate reasons supported by substantial evidence" for rejecting that source's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) (citing *McLaughlin v. Sec'y of Health, Educ. and Welfare,* 612 F.2d 701, 705 (2d Cir. 1980)). However, in 2017, the SSA "amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citation omitted).

For disability benefits claims filed on or after March 27, 2017, including the application in the present case, new SSA regulations instruct an ALJ not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c. Instead, an ALJ should determine the persuasiveness of each medical opinion using the following factors: 1) supportability, 2) consistency, 3) relationship with the claimant, 4) specialization, and 5) any other relevant factors. *Id.* The SSA has explained that supportability and consistency are the most important factors in evaluating an opinion's persuasiveness, and the ALJ must articulate how they considered both factors. *Id.*; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82

Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416).[1]

Before the decision in *Woods v. Kijakazi,* 32 F.4th 785 (9th Cir. 2022), it was unclear whether the SSA's new regulations abrogated the Ninth Circuit's standard requiring an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion. The *Woods* Court specifically overturned that standard in favor of the simpler requirement that "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." 32 F.4th at 787. Because Plaintiff applied for disability benefits after March 27, 2017, the ALJ applied the new set of regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c.

## B. Application to the Medical Source Opinions

An ALJ "may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). However, they "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. Under the revised articulation requirements, an ALJ must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions" when determining how persuasive they find that source. 20 C.F.R. § 404.1520c(b)(2).

### 1. Dr. Tilyou

Plaintiff's first claim is that the ALJ erred by failing to properly evaluate the opinion of Dr. Paul Tilyou, who treated the Plaintiff for Bipolar disorder. (Doc. 18 at 11). The ALJ

---

[1] The revised regulations specifically define the "supportability" and "consistency" factors as follows:

"(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c.

summarized Dr. Tilyou's opinion as follows:

> Dr. Paul Tilyou opined that the claimant had extreme limitation in her ability to sequence multi-step activities, to avoid distractions at work, to work with other[s] without interrupting them, to sustain a routine and regular work attendance, and to work a full day without excessive rest periods. Marked limitations were found in the claimant's ability to manage her symptoms. She was moderately limited in her ability to set goals and make plans on her own. Dr. Tilyou specifically wrote that the claimant cannot stop talking, despite multiple attempts at redirection. She interrupts extremely frequently, gets off topic extremely easily, and is distracted very easily. She would not be able to hold down any job. In contrast, the claimant manages her own bank account, made the decision not to have credit cards, and does not spend impulsively.

(R. at 22-23). Ultimately, the ALJ found Dr. Tilyou's opinion was supported by clinical evidence and was persuasive from the beginning of treatment in March 2019 through November 13, 2019. (R. at 23). However, the ALJ rejected the opinion for the treatment period following November 13, 2019, because during that time, "marked and extreme functional limitations are not supported by Dr. Tilyou's own treatment records." (*Id.*). The ALJ cited treatment notes from visits in January and February 2020, during which Plaintiff's mood was normal, speech was normal and not pressured, Plaintiff denied psychotic symptoms, and was oriented. (*Id.*). The ALJ found that Dr. Tilyou's opinion was unsupported by his own status exams and inconsistent with other evidence in the record. (*Id.*).

First, Plaintiff argues the ALJ erred in finding Dr. Tilyou's opinion was not supported by the record because he mischaracterized evidence to suggest an improvement in the Plaintiff's psychological symptoms. (Doc. 18 at 14-15). More specifically, Plaintiff contends the ALJ relied on symptoms which were consistent throughout Plaintiff's treatment such as fair judgment, concentration, mildly impaired memory, and normal speech, and ignored evidence supporting more serious limitations. (*Id.* at 15).

The Court finds the ALJ has not mischaracterized the evidence and has properly assessed Dr. Tilyou's opinion. To mischaracterize evidence is to "fail to discuss significant, probative record evidence that [is] clearly contrary to [the] finding." *McLean v. Colvin*,

648 F. App'x 621, 622 (9th Cir. 2016). Plaintiff argues that there is medical evidence from January and February 2020 of disjointed thoughts, vague memory, and reports of auditory hallucinations. (Doc. 18 at 15). Additionally, Plaintiff does not cite to any notes following November 2019 that indicate Plaintiff was unresponsive to social cues. (*Id.*). Although the ALJ does point to symptoms that remained consistent throughout Plaintiff's treatment, the ALJ rightly accounts for the fact that Plaintiff's mood stabilized during the period following November 2019. Plaintiff's mood was reported as normal or euthymic on each of the four appointments between November 2019 and February 2020. (R. at 694, 698, 703, 708). On January 8, 2020, Dr. Tilyou wrote that, although Plaintiff seemed worse on that day with very disjointed and pressured speech, she "seemed to improve when up to the 100mg Lamictal." (R. at 704). The evidence raised by Plaintiff is not so significant or severe that it clearly contradicts a finding of improvement. Moreover, where there is more than one rational interpretation of the evidence, this Court must uphold the ALJ's decision. *Thomas*, 278 F.3d at 954.

Second, Plaintiff argues the ALJ erred by failing to evaluate whether the opinion was consistent with the entirety of the record. (Doc. 18 at 16.) The Court disagrees. Contrary to Plaintiff's assertion, the ALJ properly evaluated the consistency of Dr. Tilyou's opinion by also considering treatment notes from Dr. Reyes, a licensed psychologist, and Dr. Porter, her primary care provider. (R. at 21-23). The ALJ cites Dr. Porter's notes from July 31, 2019 which report that Plaintiff had a normal mood and affect and was very stable. (R. at 715). At this time, Dr. Porter also reported that Plaintiff was feeling better in terms of her depression, and mentally she was "in the best state that [he had] ever seen her." (R. at 714-715). The ALJ also compared the contrasting opinions of Drs. Tilyou and Reyes and found the medical evidence from Dr. Tilyou's treatment notes to be more in line with Dr. Reyes' final conclusion. Although there might be evidence to support Dr. Tilyou's opinion, "[t]he ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). The ALJ's determination on consistency

also aligns with the ALJ's finding that Dr. Tilyou's opinion was unsupported by his own treatment notes. By citing the Plaintiff's mental health treatment notes, Dr. Reyes' exam, and the primary care provider's notes, the ALJ has provided substantial evidence to support his findings on consistency.[2]

Lastly, Plaintiff argues that the ALJ failed to incorporate Dr. Tilyou's opinion into the RFC for the period that it was found to be persuasive. (Doc. 18 at 17). Specifically, Plaintiff argues that Dr. Tilyou's opinion finding that Plaintiff had marked to extreme limitations within all areas of functioning should have been incorporated into the RFC and that the ALJ further erred by not explaining why he failed to incorporate those findings. (Doc. 18 at 17-18). In response, Defendant argues that the ALJ could not incorporate Dr. Tilyou's opinion even for the period in which it was persuasive because that period does not represent a continuous period of at least 12 months. (Doc. 19 at 14 (citing 20 C.F.R. § 416.905)). Pursuant to 20 C.F.R. § 416.945, the RFC must be "based on all the relevant evidence in [the] case record." Although the ALJ found Dr. Tilyou's opinion to be persuasive for a limited period of time, it is not relevant to the calculation of the RFC if it is not supported by the record. *McGee v. Kijakazi*, No. 20-36074, 2021 WL 5860899, at *2 (9th Cir. Dec. 10, 2021) ("An ALJ need only include limitations [in the RFC] that are supported by the record"). The ALJ found that Dr. Tilyou's opinion was not supported after November 2019 because the evidence no longer supported Dr. Tilyou's findings of marked to extreme limitations. It was thus logical for the ALJ to leave out Dr. Tilyou's opinion, and the Court finds no error.

## 2. PA Porter

Plaintiff also argues the ALJ erred by failing to properly evaluate the opinion of Devin Porter, P.A.-C. (Doc. 18 at 21). The ALJ summarized P.A. Porter's opinion as

---

[2] In her Reply Brief, Plaintiff argues the ALJ failed to "build an accurate and logical bridge from the evidence and his conclusion." (Doc. 20 at 2). The Court will not thoroughly address this point as it was only raised in the Reply Brief. However, the Court does note that the ALJ did meet its burden of explaining how he considered the medical opinion's supportability and consistency in a manner grounded in substantial evidence. *Woods*, 32 F.4th at 792.

follows:

> Primary care provider Devin Porter, PA-C opined in September 2019 that the claimant could occasionally lift 10 pounds. She could stand or walk for one hour a day and sit for three hours a day.  In addition, she would require extra breaks during the day, was unable to walk a city block, and would miss more than four days of work each month.

(R. at 22).

The ALJ found that P.A. Porter's opinion was not fully persuasive because it was not supported by his exam at the time he completed the opinion nor was it consistent with other medical sources. (*Id.*). Regarding supportability, the ALJ wrote that at the time of the opinion, P.A. Porter's examination notes indicated that Plaintiff had normal gait and station, joints and limbs were grossly normal, there was no costovertebral tenderness, and claimant had full range of motion of the extremities, which were nervously intact. (*Id.;* R. at 742). The ALJ also noted that there was evidence of radicular pattern consistent with low back pain, but the claimant reported that pain was being managed. (R. at 22.) The ALJ also found that the opinion was inconsistent with an orthopedic exam from August 2019 at Northern Arizona Orthopedics, the opinion of consultative neurologist Dr. Gregory Hunter, and mild findings on lumbar imaging at Summit Healthcare Community Clinic. (*Id.*).

First, Plaintiff argues that the ALJ did not properly evaluate the supportability of P.A. Porter's opinion because he only considered the opinion's supportability in light of one set of examination notes. (Doc. 18 at 22). The ALJ wrote that "Mr. Porter's opinion . . . is not supported by his exam of the claimant at the time of completion of the opinion form." (R. at 22). More specifically, Plaintiff asserts that the ALJ ignored Plaintiff's complaints of pain, limited ambulation, weight, tenderness in left shoulder, and reduced range of motion. (Doc. 18 at 23). Although the ALJ clearly articulated how he applied the supportability factor, the Court finds it is not supported by substantial evidence.

The treatment notes from September 18, 2019 indicate that the Plaintiff had normal gait and a full range of motion and that the joints and limbs appeared grossly normal. (R. at 742). However, the notes from September 18, 2019 also indicate arthralgia, back pain,

joint swelling, stiffness, and evidence of radicular pattern consistent with back pain. (*Id*.). Notes from July 29, 2019, which the ALJ did not cite, indicate arthralgia, joint, back, and neck pain, limited ambulation, limping gait, tenderness, and decreased range of active internal rotation. (R. at 714-15). When the evidence supports more than one rational interpretation, the ALJ's decision must be upheld. *Thomas*, 278 F.3d at 954. It is also true that "the ALJ is not required to discuss every piece of evidence." *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). However, to affirm the ALJ's conclusion, the Court would be forced to rely on isolated evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989) ("We may not affirm simply by isolating a specific quantum of supporting evidence." (citation omitted)). Considering all the evidence in Dr. Porter's treatment notes, the ALJ has not provided substantial evidence for his conclusion that Dr. Porter's opinion was not well supported.

Next, the Plaintiff argues that the ALJ picks and chooses evidence that supports his conclusion on consistency, while ignoring other evidence from the record that suggests more severe limitations. (Doc. 18 at 23). Specifically, Plaintiff alleges that the ALJ did not consider MRI evidence revealing mild to moderate hypertrophy and/or mild bilateral foraminal stenosis, the nerve conduction study, or Plaintiff's reports of pain, instability, numbness, or examinations revealing pain. (*Id.* at 23-24).

The ALJ points to three other pieces of evidence in the record to assess the consistency of Dr. Porter's exam. (R. at 22). First, the ALJ found Dr. Porter's examination was inconsistent with an orthopedic exam done at Northern Arizona Orthopedics on August 20, 2019. (R. at 22). The notes indicate no abnormal gait pattern, age-appropriate range of motion, and normal strength in the lower extremities, as recorded by the ALJ. (R. at 22, 638). However, the notes also suggest that Plaintiff has a L5/S1 disc collapse. (R. at 20, 638). The provider recommended that Plaintiff consult with another doctor to determine whether she was a good candidate for Radiofrequency Ablation treatment but did not recommend surgery. (R. at 20, 639). Second, the ALJ found that Dr. Porter's examination was inconsistent with that of Dr. Hunter, a consultative neurologist who examined the

1    Plaintiff on January 15, 2020. (R. at 22). Dr. Hunter found that Plaintiff had normal strength

2    and sensation and her deep tendon reflexes were intact. (R. at 669). Dr. Hunter also

3    determined Plaintiff had a questionable positive straight leg raising, acknowledged the

4    MRI showing moderate to severe bilateral L5 and S1 neural foraminal stenosis, and wrote

5    that S1 radiculopathy remains a high concern. (*Id*.). Dr. Hunter noted that Plaintiff can lift

6    and carry eleven to twenty pounds frequently and up to ten pounds continually, has

7    continuous use of both hands and feet, and can climb stairs and ramps, stoop, kneel, crouch,

8    and crawl frequently. (R. at 671-74).  Lastly, the AJL found Dr. Porter's opinion to be

9    inconsistent with imaging taken on July 11, 2019 at Summit Family Medicine which

10   revealed mild bilateral foraminal stenosis. (R. at 712). The ALJ found that these three

11   examinations were consistent with each other.

12       Although there is evidence in the record that may support Plaintiff's assertions, the

13   ALJ has provided "relevant evidence as a reasonable mind might accept as adequate to

14   support [the] conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Because

15   there is substantial evidence, the ALJ has properly evaluated the consistency of P.A.

16   Porter's opinion. Moreover, when there are conflicts within the record, it is the ALJ's

17   responsibility to resolve them. *Carmickle*, 533 F.3d at1164. Even though the ALJ erred in

18   his consideration of supportability, he properly rejected the opinion based on consistency.

19   *See Woods*, 32 F.4th at 792 ("[A]n ALJ cannot reject an examining or treating doctor's

20   opinion as unsupported *or* inconsistent without providing an explanation supported by

21   substantial evidence.") (emphasis added). Because the ALJ provided substantial evidence

22   for his findings on consistency, there is no harmful error.[3]

23       Having reviewed the briefing and record and finding no harmful error,

24

25   _____

26   [3] Plaintiff argues that the ALJ erred by failing to present the Vocational Expert
     ("VE") with an accurate hypothetical impairment. (Doc. 18 at 24). If the hypothetical
27   presented to the VE does not reflect all of the claimant's limitations, the expert testimony
     has no evidentiary value. *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988). Here,
28   however, the ALJ properly rejected Dr. Porter's opinion for consistency. Thus, the ALJ did
     not need to include the limitations reflected in Dr. Porter's opinion in the hypothetical
     presented to the VE.

1       **IT IS ORDERED** that the final decision of the Commissioner of the Social Security

2   Administration is **affirmed.**

3       **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment

4   accordingly and terminate this case.

5       Dated this 4th day of August, 2022.

Honorable Steven P. Logan
United States District Judge